UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 12 / 11 / 2014

------------------------------------------------------------------------X

NATURAL RESOURCES DEFENSE COUNCIL, INC.,      :
                                                                              :
                                        Plaintiff,                       :                    13 Civ. 942 (PAE)
                                                                              :
                    -v-                                                     :                    OPINION & ORDER
                                                                              :
UNITED STATES DEPARTMENT OF INTERIOR and   :
BUREAU OF LAND MANAGEMENT,                          :
                                                                              :
                                        Defendants.                   :
                                                                              :
------------------------------------------------------------------------X

PAUL A. ENGELMAYER, District Judge:

            This opinion resolves the final outstanding portion of a dispute between the Natural

Resources Defense Council ("NRDC"), and the U.S. Department of Interior ("DOI") and Bureau

of Land Management ("BLM") (collectively, the "Government"). Under the Freedom of

Information Act, 5 U.S.C. § 552 ("FOIA"), the NRDC sought to obtain records of coal-mining

leases previously awarded by the Government to private mining companies in the Powder River

Basin in Montana and Wyoming. The Government produced the requested documents but

redacted them extensively pursuant to FOIA Exemptions 4, 5, and 9. In a decision issued August

5, 2014, this Court granted summary judgment for the NRDC to the extent the Government

redacted documents pursuant to Exemptions 4 and 9. *See* Dkt. 59. It also granted summary

judgment for the Government as to certain quantitative information it had redacted pursuant to

Exemption 5. *See id.* As to the balance of the redactions pursuant to Exemption 5, which

reflected the BLM's qualitative reasoning in connection with its decisions as to coal-mining

lease awards, the Court requested additional briefing addressing whether the redacted material, if

disclosed, would significantly harm the Government's commercial interests. *Id.* at 47. For the

following reasons, the Court now grants summary judgment for the Government as to this point,
*i.e.*, as to the balance of the redactions made pursuant to Exemption 5.

I.    **Background**[1]

    A.    **Factual Background**

The facts of this case are reviewed in detail in the Court's August 5, 2014 opinion.  *See*
Dkt. 59, *reported at Natural Res. Def. Council, Inc. v. U.S. Dep't of Interior*, No. 13 Civ. 942
(PAE), 2014 WL 3871159 (S.D.N.Y. Aug. 5, 2014).  In brief, the Mineral Leasing Act
authorizes the Secretary of the Interior to lease public lands for coal-mining operations.  *See* 30
U.S.C. § 201(a)(1).  These public lands include almost all of the Powder River Basin, which
contains one of the largest coal deposits in the world.  Pl. 56.1 ¶¶ 1–2.  Since 1990, 28 tracts
have been offered in competitive lease sales in the Powder River Basin, 27 of which have been
leased.  Hageman Decl. ¶ 5.  There are currently seven lease sales pending in the Powder River
Basin, for a total of more than four billion tons of coal.  Pl. 56.1 ¶ 9.

Under the Mineral Leasing Act, BLM cannot accept less than fair market value ("FMV")
for the sale of a coal lease.  43 CFR § 3422.3–2(b).  Fair market value is defined under federal
regulations as the cash value at which a knowledgeable owner would sell or lease the land to a
knowledgeable purchaser.  *Id.* § 3400.0–5(n).  Before every lease sale, BLM estimates the fair
market value of the coal lease in a document called an "appraisal report."  Pl. 56.1 ¶ 16.  The
appraisal report, in turn, incorporates information from three other BLM-prepared reports: an

---

[1] The Court's account of the facts is derived from the parties' submissions in support of and in
opposition to the motions for summary judgment, including NRDC's Local Rule 56.1 Statement,
Dkt. 14 ("Pl. 56.1"), the Declaration of Elizabeth Forsyth, Dkt. 17 ("Forsyth Decl."), and the
Declaration of Steven Hageman, Dkt. 24 ("Hageman Decl.").

economic report, an engineering report, and a geologic report.  Hageman Decl. ¶ 8.  BLM's

estimate of fair market value is kept confidential.  Pl. 56.1 ¶ 17.

Following a competitive bidding process, BLM awards the lease to the company that

submitted the highest bid as long as the company is qualified to hold the lease, and the bid meets

or exceeds BLM's confidential estimate of fair market value.  43 CFR § 3422.3–2(b).  In 23 of

the 28 Powder River Basin coal lease sales conducted during the past 20 years, BLM has

received only one bid; in the remaining five cases, BLM received two bids.  Hageman Decl.

¶ 10; Pl. 56.1 ¶ 14.  In lease sales where there is only one bid, the vast majority of lease sales,

BLM's confidential estimate of fair market value effectively supplies the sole price competition

for the applicant.

### B.    Procedural History

To determine whether BLM has complied with the Mineral Leasing Act, NRDC

submitted a FOIA request on September 21, 2012, seeking (1) "all information and analysis

documents used to appraise" each of the Powder River Basin tracts that BLM had leased since

1990, and (2) "[a]ny Interior [D]epartment guidance, handbooks, manuals or similar documents

with information on estimating the value of coal tracts."  Forsyth Decl. Ex. A.  The Government

did not, at that time, respond to NRDC's requests.  Pl. 56.1 ¶ 34.

On February 8, 2013, NRDC filed this lawsuit.  Dkt. 1.  The Government then produced

the requested handbooks and manuals.  As to the requested reports, however, the Government

produced versions with extensive redactions.  Pl. 56.1 ¶ 39.  The Government cited Exemption 4

and/or Exemption 9 in support of some of its redactions and invoked Exemption 5 in support of

each of its redactions.  On July 2, 2013, NRDC objected to all redactions and withholdings, and

to the adequacy of the Vaughn Indices.  Pl. 56. ¶ 41.  After releasing a small subset of the

redacted material, the Government refused to produce fully unredacted copies of the reports, to produce the computer models, or to revise its Vaughn Indices.  Pl. 56.1 ¶ 42.

Between September 11, 2013 and January 15, 2014, the parties briefed cross-motions for summary judgment.  Dkt. 11–46.  On August 5, 2014, the Court issued an opinion granting each party's summary judgment motion in part.  Dkt. 59.

Exemption 4 protects "trade secrets and commercial or financial information obtained from a person and privileged or confidential."  5 U.S.C. § 552(b)(4).  Information is "confidential" if "disclosure would have the effect either: '(1) of impairing the government's ability to obtain information—necessary information—in the future, or (2) of causing substantial harm to the competitive position of the person from whom the information was obtained.'" *Inner City Press/Cmty. on the Move v. Bd. of Governors of Fed. Reserve Sys.*, 463 F.3d 239, 244 (2d Cir. 2006) (citation omitted).  The Court found that the Government's conclusory assertions regarding both elements were insufficient to satisfy its burden and, therefore, granted summary judgment for NRDC on Exemption 4.  *See* Dkt. 59, at 23–32.

As to Exemption 9, that exemption protects from disclosure "geological and geophysical information and data, including maps, concerning wells."  5 U.S.C. § 552(b)(9).  The Government argued that "wells" should be read to include "drill holes."  *See* Dkt. 59, at 47. Based on the plain text of the statute, the Court rejected that argument and granted summary judgment for NRDC on Exemption 9.  *See id.* at 47–49.

Finally, Exemption 5 protects "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency."  5 U.S.C. § 552(b)(5).  Exemption 5 "encompasses traditional discovery privileges," *Wood v. F.B.I.*, 432 F.3d 78, 83 (2d Cir. 2005) (Sotomayor, J.) (citing, *inter alia*, *Dep't of*

4

*Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001)), and "incorporates a qualified privilege for confidential commercial information," *Fed. Open Mkt. Comm. of Fed. Reserve Sys. v. Merrill*, 443 U.S. 340, 360 (1979).  The privilege thus exists, in part, to prevent the Government from being "placed at a competitive disadvantage."  *Id.*

The Court found that BLM uses a common methodology for determining fair market value, and that methodology has been durable over time.  *See* Dkt. 59, at 44–45.  Accordingly, the Court granted the Government's motion for summary judgment under Exemption 5 as to (1) the Government's pricing model and (2) its fair market value estimates.  *Id.* at 46.  The Court reasoned that disclosure of that information "would effectively enable a coal company to derive, or come unacceptably close to deriving, the number it must beat in order to lease the next tract for mining."  *Id.* at 45.

As to the Government's "qualitative reasoning process," however, the Court determined that it lacked sufficient information to grant summary judgment for either party.  *Id.* at 46.  On the record then established, "the Court simply [could not] tell whether or not revealing BLM's qualitative reasoning process would work a substantial harm on the Government's interest in securing an optimal price for coal-mining leases."  *Id.* at 47.  The Court therefore directed the Government to submit supplemental declarations "concretely explaining why the qualitative statements that have been withheld would, if revealed, work 'significant[] harm.'"  *Id.* (quoting *Merrill*, 443 U.S. at 363).

On September 29, 2014, the Government submitted a renewed motion for summary judgment on Exemption 5, along with new declarations.  Dkt. 69 ("Gov't Br."), 70 ("Perlewitz Decl."), 71 ("London Decl.").  On October 14, 2014, NRDC cross-moved for summary judgment or, in the alternative, for discovery or *in camera* review of unredacted documents.  Dkt. 73, 74,

75 ("NRDC Br."), 76 ("Kyle Decl."), 77 ("Kern Decl.").  On October 21 and 22, 2014, the

Government filed its opposition and reply.  Dkt. 79 ("Gov't Reply Br."), 82–86.  On October 28

and 29, 2014, NRDC did the same.  Dkt. 88 ("Spencer Decl."), 89 ("NRDC Reply Br.").  On

November 26, 2014, the Court held argument.  *See* Transcript ("Tr.").

## II.      Applicable Legal Standards

FOIA requires government agencies to "disclose records on request, unless they fall

within one of nine exemptions."  *Milner v. Dep't of Navy*, 131 S. Ct. 1259, 1262 (2011).  "These

exemptions are explicitly made exclusive, and must be narrowly construed."  *Id.* (citations and

internal quotation marks omitted).  "The agency asserting the exemption bears the burden of

proof, and all doubts as to the applicability of the exemption must be resolved in favor of

disclosure."  *Wilner v. Nat'l Sec. Agency*, 592 F.3d 60, 69 (2d Cir. 2009).  Courts review the

adequacy of the agency's justifications *de novo*.  *Id.*

"'Summary judgment is the procedural vehicle by which most FOIA actions are

resolved.'"  *N.Y. Times Co. v. U.S. Dep't of Def.*, 499 F. Supp. 2d 501, 509 (S.D.N.Y. 2007)

(quoting *Jones-Edwards v. Appeal Bd. of NSA*, 352 F. Supp. 2d 420, 423 (S.D.N.Y. 2005)).  "An

agency that has withheld responsive documents pursuant to a FOIA exemption can carry its

burden to prove the applicability of the claimed exemption by affidavit."  *Wilner*, 592 F.3d at 73.

"'Summary judgment is warranted on the basis of agency affidavits when the affidavits describe

the justifications for nondisclosure with reasonably specific detail, demonstrate that the

information withheld logically falls within the claimed exemption, and are not controverted by

either contrary evidence in the record nor by evidence of agency bad faith.  Ultimately, an

agency's justification for invoking a FOIA exemption is sufficient if it appears logical or

plausible.'"  *Id.* (quoting *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009)).

"'Summary judgment in favor of the FOIA plaintiff,'" by contrast, "is appropriate 'when an agency seeks to protect material which, even on the agency's version of the facts, falls outside the proffered exemption." *N.Y. Times*, 499 F. Supp. 2d at 509 (quoting *Petroleum Info. Corp. v. U.S. Dep't of Interior*, 976 F.2d 1429, 1433 (D.C. Cir. 1992)).

## III.   Discussion

As noted, Exemption 5 protects, among other things, "confidential commercial information" that, if disclosed, would place the Government "at a competitive disadvantage." *Merrill*, 443 U.S. at 360.  The Perlewitz Declaration, submitted by the Government in support of its renewed motion for summary judgment, establishes that disclosure of the withheld qualitative information in BLM's appraisal reports and supporting documents "would significantly harm the Government's monetary functions or commercial interests," *id.* at 363, by allowing bidders to approximate the Government's confidential floor price with substantially greater accuracy.[2]

First, the declaration clearly explains that BLM uses a common qualitative methodology to estimate the fair market value of each tract of land.  Disclosure of fully unredacted reports would reveal the factors that BLM considers at each stage of the valuation process, how its appraisers evaluate those factors, and the weight each factor is given.  *See* Perlewitz Decl. ¶¶ 10,

---

[2] NRDC argues that a prospective bidder could not "reverse engineer" BLM's appraisal methods and calculate the Government's exact fair market value estimate.  *See* NRDC Br. 1–4; NRDC Reply Br. 1–4.  But Exemption 5, in addition to protecting information that would reveal BLM's fair market value estimate, protects information that would facilitate meaningfully better prediction of the Government's figure.  *See Morrison-Knudsen Co. v. Dep't of the Army of U.S.*, 595 F. Supp. 352, 355 (D.D.C. 1984) *aff'd* 762 F.2d 138 (D.C. Cir. 1985) ("While the papers being withheld will not reveal the precise bid to be made by the Army against M–K's prospective bid, the evidence shows that they will enable an informed bidder such as M–K to make a closer approximation than would be possible on the basis of the information to be released with the bid invitation and other available data."); *see also Raytheon Co. v. Dep't of Navy*, 89 Civ. 2481 (JHG), 1989 WL 550581, at *6 (D.D.C. Dec. 22, 1989) ("Harm to [one's] competitive position can come from imperfect estimates as well as perfect ones.").

12, 14, 17, 20, 22, 24, 26, 28, 29, 42, 45, 50, 51, 53, 57, 65.  For example, the redacted

information includes "the method of statistical distribution BLM uses to simulate changes in

future coal prices and, ultimately, to better predict the economic value of the coal lease tract."

*Id.* ¶ 42.  With that statistical model, bidders could ascertain the Government's estimate of future

coal prices, a "significant input variable."  *Id.* ¶ 43.  Although courts have sometimes required

the Government to disclose single factors relevant to multi-factor analyses—*see, e.g.*, *Acumenics

Research & Tech. v. U.S. Dep't of Justice*, 843 F.2d 800, 807–08 (4th Cir. 1988) (unit prices);

*News Grp. Boston, Inc. v. Nat'l R.R. Passenger Corp.*, 799 F. Supp. 1264, 1269 (D. Mass. 1992)

(labor costs)—NRDC has not identified, and the Court has not found, authority that would

require the Government to disclose *every* factor it considers *and* its method for evaluating those

factors.  Given the "limited number of factors BLM uses to determine value," disclosure of this

information would allow bidders to "more closely predict BLM's FMV estimate."  Perlewitz

Decl. ¶ 22.

Second, the declaration clarifies that some of the salient information is identical for every

fair market value estimate.  *See id.* ¶¶ 16, 34, 36, 37, 39, 40, 41, 48, 54, 60, 61, 70.  To provide

just a few examples, the Government redacted "a chart depicting Powder River Basin coal

demand forecasts," *id.* ¶ 34, "the estimated range of cash costs for various mines in the region,"

*id.* ¶ 39, "charts depicting historical real price distribution," *id.* ¶ 41, and a model containing

"BLM's interpretation of data from nearly 5000 exploratory drill holes spanning thousands of

acres of surface," *id.* ¶ 70.  Because this data remains static across reports, at least for some

period of time, disclosure would provide bidders with the exact information BLM will use to

estimate fair market value for future lease sales.[3]  In addition, BLM redacted the "specific publications, reports, articles, subscriptions, and databases referenced and used," *id.* ¶ 48, and "the identity of the commercial software used," *id.* ¶ 54.  With that information, bidders could acquire even more of the precise information BLM will use to value future leases.[4]  And bidders would, naturally, "use [that information] to determine how BLM would value the tracts in future lease sales."  *Id.* ¶ 48.

Third, as the Court's August 5, 2014 decision anticipated might be the case, *see* Dkt. 59, at 46, the declaration demonstrates that the qualitative and quantitative data are inextricably intertwined.  The appraisers consider "both quantitative and qualitative factors" in the course of a unified analysis.  Perlewitz Decl. ¶ 25.  At argument, for instance, the parties discussed BLM's qualitative analyses of which quantitative data to use.  *See* Tr. 4 (economist makes a subjective, qualitative determination as to which price projections to use); Tr. 26 (economist makes a subjective, qualitative decision as to which discount rate to apply).  Moreover, access to qualitative narratives in unredacted reports would allow prospective bidders to determine at least some of the numeric figures BLM uses to reach its fair market value estimates.  For example, the

---

[3] The NRDC argues that "much if not all of the information" in BLM's analyses is "commercially stale."  NRDC Br. 3.  That characterization, even if accurate, does not preclude the information from Exemption 5 protections.  As long as BLM relies on such information, disclosure will harm the Government's commercial interests.  *See* Dkt. 59, at 45 & n.12; *cf. Bloomberg L.P. v. Bd. of Governors of Fed. Reserve Sys.*, 649 F. Supp. 2d 262, 282 (S.D.N.Y. 2009), *aff'd* 601 F.3d 143 (2d Cir. 2010) (Exemption 5 does not protect "historic data").

[4] This would be a significant revelation:  In an effort to demonstrate that "much of the information" in BLM's geologic reports is publicly available, NRDC provided a list of 25 "public sources for coal-lease valuation information."  Kern Decl. ¶ 7 & App'x; *see also id.* ¶ 14 (discussing the sources the BLM appraisers "most likely" use); *id.* at ¶ 15 (listing various "public sources for . . . economic data").  Accordingly, without the unredacted reports, potential bidders apparently will not know which of the many available sources of information the BLM uses in reaching its fair market value estimates.

appraisal reports contain "staff interpretations of geologic data, BLM modeling assumptions, and mineability considerations."  Perlewitz Decl. ¶ 13.  Even if the Government redacted BLM's numeric estimate of the recoverable coal in a particular tract, that figure is "a direct result of BLM's geologic models," which would be disclosed.  *Id.*  Similarly, "[t]he engineering report briefly describes the mining cost model BLM uses and how, using the cost model, BLM generates input for the [discounted cash flow] model."  *Id.* ¶ 59.  The reports also contain "the results of BLM's economic valuation," just one step removed from the confidential floor price itself.  *Id.* ¶ 47.

The Court's August 5, 2014 opinion explained why disclosure of BLM's pricing model and fair market value estimates would harm the Government's commercial interests.  Dkt. 59, at 44–46.  The Court then considered the possibility of distinguishing between qualitative and quantitative information.  *Id.* at 46–47.  However, while the Government's previously submitted Hageman Declaration focused on the quantitative information withheld from BLM's appraisal reports, the Perlewitz Declaration makes clear that disclosure of the qualitative information would be independently harmful and, in any event, that such information is not "reasonably segregable."  5 U.S.C. § 552(b).  The Government's justification for withholding the redacted information is, therefore, "logical or plausible."  *Wilner*, 592 F.3d at 73.  Accordingly, the Court grants the Government's motion for summary judgment as to FOIA Exemption 5.[5]

## IV.  Discovery and *In Camera* Review

As an alternative to summary judgment, NRDC requests that the Court permit discovery or review unredacted versions of the reports *in camera*.  NRDC Br. 1, 5; NRDC Reply Br. 5.

---

[5] As the Government agreed at argument, however, BLM's commercial interests do not preclude disclosure of the names of the authors of the various reports.  *See* Tr. 31–34.

"Affidavits submitted by an agency are accorded a presumption of good faith; accordingly, discovery relating to the agency's search and the exemptions it claims for withholding records generally is unnecessary if the agency's submissions are adequate on their face." *Carney v. U.S. Dep't of Justice*, 19 F.3d 807, 812 (2d Cir. 1994) (citation omitted).  "In order to justify discovery once the agency has satisfied its burden, the plaintiff must make a showing of bad faith on the part of the agency sufficient to impugn the agency's affidavits or declarations, or provide some tangible evidence that an exemption claimed by the agency should not apply or summary judgment is otherwise inappropriate." *Id.* (citations omitted).

Similarly, "'[i]n camera* review is considered the exception, not the rule.'" *Am. Civil Liberties Union v. FBI*, No. 11 Civ. 7562 (WHP), 2014 WL 4979251, at *3 (S.D.N.Y. Oct. 6, 2014) (quoting *Local 3, Int'l Bhd. of Elec. Workers v. NLRB*, 845 F.2d 1177, 1180 (2d Cir. 1988)).  It is appropriate only in unusual circumstances, such as where "'there is evidence of agency bad faith,'" *id.* (quoting *Carter v. U.S. Dep't of Commerce*, 830 F.2d 388, 393 (D.C. Cir. 1987)), or "[w]here the record is vague or the agency claims too sweeping," *Hopkins v. U.S. Dep't of Hous. & Urban Dev.*, 929 F.2d 81, 86 (2d Cir. 1991) (citation omitted).

NRDC does not allege that the Perlewitz Declaration was written or submitted in bad faith, and the Court finds the declaration adequate on its face.  Discovery and *in camera* review are, therefore, inappropriate in this case.

## CONCLUSION

For the foregoing reasons, the Court hereby grants the Government's motion for summary judgment as to the FOIA Exemption 5 claims.  The Clerk of Court is respectfully directed to terminate all pending motions and to close this case.

SO ORDERED.

Paul A. Engelmayer

PAUL A. ENGELMAYER
United States District Judge

Dated: December 11, 2014

New York, New York